UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA W. ASENDORF,

    Plaintiff,

v.                                                                  Case No. 8:07-CV-2260-T-EAJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 8).

judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff protectively filed an application for DIB on May 30, 2003, claiming an onset of disability on March 23, 2003, due to chronic shingles and two disc impairments in her back. (T 20, 69) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision issued on June 12, 2006. (T 20-28) The ALJ found that Plaintiff was not eligible for DIB because she was not disabled at any time through the ALJ's decision. (T 28) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T 6-9) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits after exhausting all administrative remedies (Dkt. 1). The Commissioner's decision is ripe for review under the Act.

At the time of the November 10, 2005 hearing, Plaintiff was forty-nine years old and had a high school education. (T 282) Plaintiff also attended a business college for approximately one year. (T 282-83) Her past work experience includes work as an office manager for a group of psychologists, an administrative assistant for a laboratory, and a hospital business office supervisor. (T 28)

To determine if Plaintiff is disabled, the ALJ performed a five-step evaluation. First, the ALJ held that there was evidence regarding Plaintiff's self-employment after the alleged onset date of disability. (T 22) However, the ALJ deferred ruling on whether Plaintiff's self-employment earnings constituted significant gainful activity because the ALJ concluded that Plaintiff was not disabled. (Id.)

Second, the ALJ found that Plaintiff had the following severe impairments: a history of shingles with recurrent episodes of herpes zoster neuralgia, cervical disc bulge, low back pain, and a mental impairment. (T 23) Although Plaintiff's ailments were "severe," the ALJ determined that they did not meet or medically equal those listed in the Listing of Impairments. (T 23-24) Third, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to do light exertional work.[2] (T 24) Specifically, the ALJ held that Plaintiff had "the ability to lift and carry twenty pounds occasionally and ten pounds frequently, to stand an/or walk six out of eight hours, and to sit six hours with the opportunity to alternate positions and with no more than occasional climbing, balancing, bending, kneeling, crouching, and crawling." (Id.) In addition, the ALJ found that Plaintiff "is moderately limited in her ability to attend, concentrate, and keep pace." (Id.)

Based upon the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff can perform her past relevant work as an officer manager for a psychologist group. (T 28) Based on an assessment by a psychologist, the ALJ held that Plaintiff retained the ability to perform simple to moderately complex mental tasks and to make work decisions. (Id.) Accordingly, the ALJ found

---

[2] Light work involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

that Plaintiff was not disabled at any time through the date of the decision and denied Plaintiff's claim for DIB under the Act. (Id.)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff argues that the Commissioner erred by: (1) defining the term "moderate limitation" in the hypothetical question posed to the VE; (2) not crediting a state agency psychologist's opinion regarding Plaintiff's moderate limitation related to her mental function; and (3) discounting the opinions of Plaintiff's treating physicians and relying on the opinions of state agency non-examining physicians. Further, Plaintiff argues that new evidence submitted to the Appeals Council warrants remand. Issues one and two are intertwined and will be addressed together.

**A.** Plaintiff claims that the Commissioner erred by defining the term "moderate limitation" in the hypothetical question posed to the VE. Specifically, Plaintiff contends that the ALJ erred by defining "moderate limitation" to mean that the specific mental function could be performed satisfactorily. Plaintiff asserts that the ALJ's definition of "moderate limitation" is inconsistent with the state agency psychologist's opinion regarding Plaintiff's moderate limitation.

Once a claimant has met his initial burden of showing that he cannot do past work, the testimony of a VE is generally required to determine whether the claimant's RFC permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir. 1986) (citation omitted). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229

(11th Cir. 1999). However, the hypothetical question need only include limitations supported by the record. Id.

In this case, the ALJ relied on the testimony of the VE to establish that Plaintiff could perform his past relevant work. In a hypothetical question posed to the VE, the ALJ stated that Plaintiff's ability to maintain concentration, persistence, and pace was a "moderate limitation." (T 328) The ALJ asked the VE to assume that moderate limitation means "the individual is able to function satisfactorily" and there is "some limitation." (Id.) Specifically, the ALJ noted that the VE should assume that Plaintiff is moderately limited in the ability to maintain attention, concentration, and persistence for extended periods of time. (T 329) The VE answered that Plaintiff could perform her past job as an office manager for a psychologist group. (T 328-29) Furthermore, the VE testified that Plaintiff could not perform her job as a hospital supervisor "[b]ecause the way she described that hospital job, seven departments, 38 staff, I would think that if you had anything less than perfect concentration, attention, persistence and pace, that would be a real pressure job." (T 329) In an alternative hypothetical question, the ALJ asked the VE to assume that the claimant had "marked limitation" in her ability to maintain concentration, persistence, and pace. (T 333) The ALJ defined "marked limitation" as severely limiting Plaintiff's ability to function, but not precluding Plaintiff's functions. (Id.) In response, the VE testified that Plaintiff would not be able to perform any of her prior jobs with a "marked limitation" regarding this specific mental function. (Id.)

Plaintiff suggests that the ALJ's definition of "moderate limitation" set forth in the hypothetical question to the VE is defective because the opinion of the state agency psychologist, Martha W. Putney, Ph.D., ("Dr. Putney"), presumed that Plaintiff suffered from an unreasonable number and length of rest periods (Dkt. 11 at 9). Plaintiff contends that the ALJ improperly equated

"moderate limitation" to mean no limitation and the ALJ failed to use the typical definition of "moderate" when posing his hypothetical question to the VE  (Dkt. 11 at 10-13).  There is no merit to Plaintiff's arguments.

First, Dr. Putney concluded that Plaintiff's moderate limitation on concentration and persistence allowed Plaintiff to perform simple to moderately complex mental tasks on a regular basis and to make work decisions.  On March 1, 2004, Dr. Putney reviewed Plaintiff's records and completed a Psychiatric Review Technique Form ("PRTF") and a mental assessment of Plaintiff.  (T. 237-54)  Dr. Putney assessed Plaintiff's mental abilities in 20 different areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption.  (T 251-52)  Dr. Putney concluded that Plaintiff was not significantly limited in 18 of the 20 areas.  (Id.)  In particular, Dr. Putney determined that Plaintiff was moderately limited in two areas: (1) the ability to maintain attention and concentration for extended periods; and (2) the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Id.)  Further, Dr. Putney indicated that Plaintiff was "able to perform simple to moderate complex mental tasks & to make work decisions."  (T 253)  Dr. Putney explained that Plaintiff had only a "minimal to moderate" limitation associated with sustained concentration and persistence and "is capable of performing simple to moderately complex mental tasks on a regular basis."  (Id.)  Thus, the ALJ's definition of "moderate limitation" to mean that Plaintiff's mental functions could be performed satisfactorily is consistent with Dr. Putney's opinion.

Second, the ALJ's definition of "moderate limitation" did not eliminate Plaintiff's mental restrictions  from the hypothetical question posed to the VE.  Rather, the ALJ expressly asked the

6

VE to assume there was "some limitation" to Plaintiff's ability to maintain attention, concentration and persistence for extended periods of time. (T 328)

Finally, the critical issue is not whether the ALJ employed the typical definition of moderate limitation, but whether the VE understood the degree of limitation he was to assess. In Cantrell v. McMahon, 227 Fed. Appx. 321, 322 (5th Cir. 2007)(unpublished), the ALJ defined "moderate" in relation to claimant's ability to maintain attention and concentration for extended periods as meaning "there are some moderate limitations, but the person can still perform the task satisfactorily." The court held that the ALJ did not improperly define the term "moderate" because there was substantial evidence that the VE knew the degree of limitation at issue in assessing claimant's RFC. Id.

In this case, it is evident that the VE understood the degree of Plaintiff's mental limitation as set forth in the ALJ's hypothetical questions. When asked to assume that moderate limitation means "the individual is able to function satisfactorily" and there is "some limitation" regarding Plaintiff's concentration, persistence, and pace for an extended period of time, the VE responded that Plaintiff could perform her past job as an office manager for a psychologist group. However, the VE testified that Plaintiff could not perform her prior job of a hospital supervisor with moderate limitation because this job would require nearly perfect concentration, attention, persistence and pace. Similarly, the VE stated that Plaintiff could not perform any of her prior jobs if she suffered from marked limitation related to her concentration, persistence, and pace.

The determination of a claimant's RFC is a medical determination reserved for the Commissioner. 20 C.F.R. §§ 404.1545(a), 404.1546. The hypothetical questions posed to the VE in this case comprehensively described Plaintiff's impairments that the ALJ found to be supported

7

by substantial evidence. Moreover, the VE understood the degree of limitation at issue in assessing Plaintiff's RFC. Thus, the ALJ's evaluation of Plaintiff's mental restrictions and the VE's testimony are based on substantial evidence.

**B.** Plaintiff's next argument is that the ALJ erred by discounting the opinions of Plaintiff's treating physicians, J. Terry Petrella, M.D. ("Dr. Petrella") and Hobart Helman, M.D. ("Dr. Helman"), and relying on the opinions of state agency non-examining physicians, J.D. Perez, M.D. ("Dr. Perez") and Caroline L. Moore, D.O. ("Dr. Moore") regarding Plaintiff's physical limitations.

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.[3] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. Bloodsworth, 703 F.2d at 1240. The opinions of non-examining physicians, when contrary to the examining physician, are entitled to little weight, and standing alone do not constitute substantial evidence. Sharfarz, 825 F.2d at 280.

Plaintiff asserts that the ALJ disregarded the opinion of Plaintiff's treating physician, Dr. Petrella, concerning Plaintiff's limited lifting ability (Dkt. 11 at 16). Similarly, Plaintiff alleges that

---

[3] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2).

8

the ALJ improperly discounted Dr. Hellman's opinion of Plaintiff's RFC based on the assessments of two state agency physicians (Dkt. 11 at 16-18).

Dr. Petrella

Dr. Petrella, a neurologist, treated Plaintiff from November 2002 to March 2003. (T 161-70) On November 4, 2002, prior to Plaintiff's alleged onset of disability, Dr. Petrella noted that Plaintiff experienced profound hyperreflexia in her lower and upper extremities. (T 165) On March 27, 2003, Dr. Petrella treated Plaintiff for pain associated with a facet block injection in her cervical spine. (T 161) Dr. Petrella wrote that, although Plaintiff complained of severe neck and headache pain following the injection, a CT scan of her brain and a MRI of her brain and cervical spine were both unremarkable. (Id.) Dr. Petrella also stated that, while Plaintiff had slight degenerative disk disease and a slight bulging disk, "[l]uckily, she has an unremarkable neurological examination." (Id.) Dr. Petrella instructed her to avoid carrying objects on her shoulders, to avoid lifting anything over ten pounds, to alternate her tasks at work, to avoid resting the telephone on her shoulder, and to avoid assuming one posture for any length of time. (T 161-62) In addition, Dr. Petrella recommended conservative treatment including physical therapy and advised Plaintiff to discontinue using all narcotics, pain remedies, and over-the-counter and prescription remedies. (T 161) Dr. Petrella was confident that Plaintiff's symptoms would resolve over time. (T 162)

In determining Plaintiff's RFC, the ALJ stated that she considered the restrictions recommended by Dr. Petrella to the extent that they were supported by the evidence. (T 25) The ALJ properly discounted Dr. Petrella's diagnosis of profound hyperreflexia in Plaintiff's extremities because no other physicians, including Dr. Petrella, noted such a finding after November 2002. (T

9

26, 141-45, 161-70) Indeed, in December 2002, Plaintiff was treated by Kyle W. Ruffing, M.D., ("Dr. Ruffing") a neurologist, for back pain. Plaintiff's general examination was unremarkable and Plaintiff's motor examination showed no atrophy and no fasciculations. (T 143) The ALJ also discounted Dr. Petrella's opinion based upon a consultive examination performed on September 8, 2003 by Loren S. Carlson, D.O. ("Dr. Carlson"). (T25) Dr. Carlson diagnosed Plaintiff with chronic pain in the thoracic and lumbar region and two bulging discs. (T 200) Further, Dr. Carlson noted that while Plaintiff was probably injured by an epidural injection, "she seems to have come through this at this time."[4] (Id.) According to Dr. Carlson's treatment notes, Plaintiff had some limited range of motion in her lower back and legs but there was no evidence of kyphosis, scoliosis, lordosis, or muscle spasms. (Id.)

The ALJ also concluded that Plaintiff had the ability to lift and carry twenty pounds occasionally and ten pounds frequently, which was not as restrictive as Dr. Petrella's recommendation to avoid lifting anything over ten pounds. (T 24) Both state agency non-examining physicians determined that Plaintiff was capable of occasionally lifting twenty pounds and frequently ten pounds. (T 203, 256) Likewise, the examinations by Drs. Ruffing and Carlson do not reveal any clinical or objective findings to support Dr. Petrella's opinion that Plaintiff was limited to lifting anything over ten pounds.[5] (T 142-44, 198-200)

---

[4] Apparently, Dr. Carlson was referring to Plaintiff's history of chemical meningitis following an epidural injection by Joseph Turnipseed, M.D. ("Dr. Turnipseed") in March 2003. (T 198)

[5] Additionally, at the hearing, the VE testified that Plaintiff's past work as an office manager was a sedentary job in which "she sat most of the day and didn't do any significant lifting." (T 326) This testimony is consistent with Plaintiff's description of her duties as an office manager. Plaintiff indicated that, as an office manager, she sat for seven to eight hours and lifted less than ten pounds. (T 82) In fact, Plaintiff wrote that she never did any lifting or carrying in this job. (Id.) Therefore, whether Plaintiff could occasionally lift twenty pounds or lift no more than ten pounds, the evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as an office

The duty to resolve conflicts in the evidence is the duty of the Commissioner in the first instance, not the reviewing court. See generally Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996). In addition, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court may not decide the facts anew or re-weigh the evidence. Bloodsworth, 703 F.2d at 1239. Even if the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Id.

Based on the record, the ALJ concluded that Dr. Petrella's opinion regarding Plaintiff's physical limitations was inconsistent with his prior treatment notes and contrary to other objective medical evidence. Plaintiff has not shown that the reasons cited by the ALJ are unsupported by the record, were misinterpreted, or were incorrect. Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Petrella's opinion regarding Plaintiff's exertional lifting limitation.

Dr. Helman

Dr. Helman, Plaintiff's primary care physician, treated Plaintiff from May 2002 to October 2005. (T 210-30, 263-69) Plaintiff visited Dr. Helman for a variety of conditions, including lower back pain, congestion, coughing, insomnia, dizziness, shingles, and muscle aches. (Id.) During 2005, Dr. Helman saw Plaintiff on two occasions for complaints of dizziness and for an outbreak of shingles. (T 263-64) Both conditions were resolved with medications. (Id.) On October 21, 2005, Dr. Helman completed a form assessing Plaintiff's RFC. According to Dr. Helman, Plaintiff

---

manager.

was restricted to sitting, standing, and walking in a working position for less than one hour out of an eight hour day, to lifting up to five pounds occasionally, and to stooping occasionally. (T 268-69) Dr. Helman also indicated that Plaintiff would have to lie down for a total of two hours during an eight hour day. (T 268)

The ALJ considered Dr. Helman's opinion regarding Plaintiff's restrictions and gave Dr. Helman's findings little weight based on the entire record. (T 26) Specifically, the ALJ indicated that the restrictions were not supported by Dr. Helman's treatment notes. Plaintiff has not shown this finding to be incorrect.

Additionally, Dr. Helman's restrictive limitations were contrary to the Residual Functional Assessments conducted in 2003 and 2004 by Drs. Perez and Moore, non-examining state agency physicians. (T 202-09, 255-62) Both Drs. Perez and Moore concluded that Plaintiff suffered from chronic shingles, with post herpetic neuralgia, and degenerative disc disease. (T 207, 255) They concluded that Plaintiff could occasionally lift twenty pounds and frequently ten pounds; she could stand, walk, or sit for six hours in an eight hour day with normal breaks. (T 203, 256) Thus, because Dr. Helman's findings were inconsistent with his prior treatment notes and contrary to the assessments by the state agency physicians, the ALJ properly discounted Dr. Helman's opinion.

**C.** Plaintiff contends that the Appeals Council erred by not remanding the case based upon the results of a lumbar spine MRI study conducted two days after the ALJ's decision. Specifically, Plaintiff asserts that the June 14, 2006 MRI report confirms and corroborates significant lower back pain and the Appeals Council abused its discretion in refusing to remand the case back to the ALJ for consideration of this new evidence. The Appeals Council considered the evidence and denied review. (T 6-9)

The Court has two possible methods of review under Section 405(g), which allows a district court to remand a disability application to the Commissioner: the "sentence four" and "sentence six" methods. See 42 U.S.C. § 405(g).[6] Under the "sentence four" method, the Court reviews whether the Appeals Council's decision to deny benefits is supported by substantial evidence in the record as a whole, including any new evidence. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1269 (11th Cir. 2007). Conversely, the "[s]entence six [method] allows the district court to remand to the Commissioner to consider previously unavailable evidence." Id. However, it does "not grant a district court the power to remand for reconsideration of evidence previously submitted to the Appeals Council." Id.

A remand to the Commissioner is proper under sentence six only when new and material evidence that was not incorporated into the administrative record comes to the district court's attention. Therefore, the district court does not have the power to remand under sentence six if the new evidence submitted has been considered by the Appeals Council and is part of the administrative record. Id.

Here, remand under sentence six is inappropriate because the 2006 MRI report was before the Appeals Council. (T 6-9, 276-77) However, because Plaintiff argues that the Appeals Council did not conduct a meaningful review of her case before affirming the ALJ's decision, the 2006 MRI report may be the basis for a "sentence four" remand. See Ingram, 496 F.3d at 1269. Under

---

[6] The "fourth sentence" of Section 405(g) gives district courts "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The "sixth sentence" of Section 405(g) gives district courts the ability to remand an application for DIB to the Commissioner of Social Security when there is a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id.

"sentence four," the Court reviews whether the Appeals Council's decision to deny benefits was supported by substantial evidence in the record as a whole – including any new evidence. Id.

The Appeals Council accepted Plaintiff's new evidence but denied review because, even in light of the 2006 MRI report, the Appeals Council found no error in the ALJ's opinion because the 2006 MRI report was consistent with prior medical evidence considered by the ALJ. (T 6, 276) In her opinion, the ALJ noted that a December 2002 lumbar spine MRI study showed only mild spondylosis without any enhancement. (T 23, 141) The ALJ also considered a March 2003 MRI study which revealed a disc bulge but indicated nothing "unremarkable." (T 23, 150) The 2006 MRI report continued to show lumbar spondylosis and suggested Plaintiff's back pain was caused by a muscle spasm or sprain. (Id.) As such, the 2006 MRI report did not indicate a worsening of Plaintiff's condition. (T 23, 276-77) Moreover, the ALJ already considered Plaintiff's back pain at the administrative hearing and limited Plaintiff to a reduced range of light work, with the opportunity to alternate positions and restrictions on climbing, balancing, bending, kneeling, crouching, and crawling. (T 23-24)

Accordingly, the Appeals Council's consideration of the 2006 MRI report, and its decision to affirm the ALJ's decision in spite of the report, does not render the denial of benefits erroneous.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner denying Plaintiff's application for benefits is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida this 12th day of February, 2009.

_____
ELIZABETH A JENKINS
United States Magistrate Judge